UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TRUSTEES OF THE TEAMSTERS LOCAL 631 SECURITY FUND FOR SOUTHERN NEVADA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>INTERNATIONAL EXPO SERVICE, INC.,<br><br>Defendant. | 2:11-CV-361 JCM (RJJ) |

**ORDER**

Presently before the court is plaintiffs Trustees of the Teamsters Local 631 Security Fund for Southern Nevada and Trustees of the Teamsters Convention Industry Training Fund's motion for default judgment. (Doc. #8).

This case stems from the alleged failure of the defendant to contribute all required contributions to the trust funds on behalf of its covered employees. (Doc. #1). As stated in the complaint, plaintiffs are the trustees of the Teamsters Local 631 Security Fund for Southern Nevada and the Teamsters Convention Industry Training Fund ("trust funds"). They are fiduciaries for the purposes of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1500. The defendant International Expo Service, Inc. acted as an employer within the State of Nevada and employed persons to perform work under a collective bargaining agreement between International Expo and International Brotherhood of Teamsters Local 631. The trust funds are

**James C. Mahan**
**U.S. District Judge**

1  ERISA employee benefit trust funds that provide benefits to covered employees pursuant the trust
2  agreements.
3  　　According to the present motion (doc. #8) and the complaint (doc. #1), the defendant failed
4  to contribute to the trust funds as required by the trust agreements. Plaintiffs filed their complaint
5  (doc. #1) on March 8, 2011 against International Expo for unpaid contributions, liquidated damages,
6  interest, court costs and attorneys' fees, equitable relief, and any other appropriate relief.
7  International Expo was served on March 14, 2011. (Doc. #5). The defendant failed to respond to the
8  complaint in any manner. Thus, on June 9, 2011, plaintiffs filed a motion for entry of clerk's default
9  for failure to answer pursuant to Federal Rule of Civil Procedure 55(a). (Doc. #6). The clerk entered
10 the default against the defendant on June 10, 2011. (Doc. #7). Plaintiffs then filed the present motion
11 for default judgment on August 2, 2011. (Doc. #8).

12 **Motion for Default Judgment**

13 　　Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment
14 for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by
15 affidavit or otherwise, the clerk must enter the party's default." Federal Rule of Civil Procedure
16 55(b)(2) provides that "a court may enter a default judgment after the party seeking default applies
17 to the clerk of the court as required by subsection (a) of this rule." As the court has entered default
18 against the defendant (doc. #7), the plaintiffs' present motion for entry of default judgment is proper.
19 Fed. R. Civ. P. 55(b)(2).

20 　　**A.**　　**Federal Rule of Civil Procedure 55(b)**

21 　　Pursuant to Federal Rule of Civil Procedure 55(b), following the clerk's entry of default
22 against the defendant under rule 55(a), a court may enter default judgment against the defendant
23 upon motion by the plaintiffs. *See Playboy Enters. Int'l, Inc. v. Muller*, 314 F. Supp. 2d 1037,
24 1038–39 (D. Nev. 2004); *Ring Central, Inc. v. Quimby*, 711 F. Supp. 2d 1048, 1057 (N.D. Cal.
25 2010). Here, the clerk entered default against defendant on June 10, 2011 (doc. #7), for failing to
26 plead or otherwise defend, thereby making plaintiffs' motion for default judgment (doc. #8) proper.

27
28

**James C. Mahan**
**U.S. District Judge**

- 2 -

The court looks at the following factors to determine if entering default judgment is appropriate; (1) the possibility of prejudice to the plaintiffs, (2) the merits of plaintiffs' substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986) (*citing* 6 Moore's Federal Practice § 55.31 (3d ed. 1997)); *see Koninklijke Philips Elecs. N.V. v. KXD Tech., Inc.*, No.: 2:05-cv-01532-RLH-GWF, 2008 U.S. Dist. LEXIS 50839, at *11–12 (D. Nev. July 1, 2008).

### 1.    Prejudice To The Plaintiffs

The plaintiffs and the covered employees will be substantially prejudiced if default judgment is not entered. As the defendant has failed to respond to the complaint, plaintiffs "will be left without a remedy if default judgment is not entered in their favor." *See RingCentral*, 711 F. Supp. 2d at 1058. Therefore, this factor weighs in favor of entering the default.

### 2.    Merits of the Claim/Sufficiency of the Complaint

The next two factors deal with whether the plaintiffs have pled facts to support a claim on which they may recover. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175–76 (C.D. Cal. 2002), *Koninklijke*, 2008 U.S. Dist. LEXIS 50839, at *12–13 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D.494 (C.D. Cal. 2003)). "The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *See Geddes*, 559 F.2d at 560 (citing *Pope v. United States*, 323 U.S. 1, 12, (1944)); *see also* Fed. R. Civ. P. 8(b)(6).

As previously mentioned, the court entered default against the defendant in June of 2011. (Doc. #7). Since the clerk's default was properly entered, the facts alleged in the complaint, specifically, the fact that the defendant has failed to pay the contributions as required, are accepted as true. Thus, the second and third factors weigh in favor of entering default judgment against the defendant.

**James C. Mahan**
**U.S. District Judge**

- 3 -

### 3. Sum of Money At Stake

Plaintiffs contend that the amount of money at stake is $30,719. As fully discussed in section B below, the plaintiffs have demonstrated that this amount accurately represents the amount owed under ERISA and the trust agreements. Further, as the defendant has not defended itself in any manner or disputed the amount, the court has no basis in law or fact for concluding otherwise. This factor favors entering default judgment against the defendant.

### 4. Possibility of a Dispute Concerning Material Facts

As previously mentioned, the defendant accepted service of the complaint (docs. #4 and #5), yet has failed to dispute the factual allegations in the complaint. Further, there is substantial evidence on the record that supports the plaintiffs' allegations and negates the possibility of any dispute over the facts of the case. (Doc. #8-2, Exs. 2-5). Therefore, the court has no grounds to dispute the legitimacy of plaintiffs' claims and is inclined to enter default judgment against the defendant.

### 5. Excusable Neglect

The record does not demonstrate the defendant's grounds for its failure to respond to the complaint. Therefore, the court is not inclined to determine whether the defendant's failure to respond constitutes excusable neglect. This factor neither supports nor weighs against entering default judgment.

### 6. Public Policy

Lastly, when, as here, the defendant fails to defend after receiving the complaint, it has "forfeited any right to have the case heard on its merits." *See PepsiCo*, 238 F. Supp. 2d at 1177 (stating that "[d]efendant's failure to answer [p]laintiffs' [c]omplaint makes a decision on the merits impractical, if not impossible," and "termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action"); *Koninklijke*, 2008 U.S. Dist. LEXIS 50839, at *19. Further, the court entering default judgment promotes the public policy of enforcing collective bargaining agreements and requiring businesses to pay the necessary contributions. This factor supports a finding that entering default judgment is proper.

James C. Mahan
U.S. District Judge

- 4 -

### B.     Relief Sought

In the plaintiffs' complaint (doc. #1), they seek "judgment against International Expo in an amount demonstrated at trial for unpaid contributions, liquidated damages, interest, court costs and attorney's fees as required by ERISA and the Trust Agreements**.**"

#### 1.     Possible Relief Under the Governing Documents and ERISA

Plaintiffs assert that the collective bargaining agreement, the trust agreements, the collection policy and 29 U.S.C. § 1132(g), "provide for assessment of interest, audit fees, expenses, administrative fees, attorney's fees and costs, and liquidated damages, (sic) against an employer in the event the employer defaults in making payments to the [t]rust [f]unds and legal proceedings are required to recover such payments." (Doc. #8). The trust funds' governing documents specify that an employer "that is delinquent on its [t]rust [f]unds contributions must pay 18% interest on those contributions." (Doc. #8; *see also* doc. #8-2, Exs. 1, 2, 3, and 4). Finally, "delinquent employers are also liable under the [t]rust [f]unds' governing documents (just as they are under ERISA) for liquidated damages equal to 20% of the delinquent contributions." (Doc. #8; *see also* doc. #8-2, Exs. 2, 3, and 4; 29 U.S.C. § 1132(g)).

#### 2.     Calculating the Relief

##### a.     Unpaid Contributions

The delinquent contributions are detailed in the reports that International Expo voluntarily submitted. (Doc. #8-2, Exs. 5-11). For January 2010, International Expo reported that it owed $8,671.50 to the trust funds. (Doc. #8-2, Ex. 5). For February 2010, International Expo reported that it owed $1,300.73. (Doc. #8-2, Ex. 6). For January 2011, International Expo reported that it owed $6,343.70. (Doc. #8-2, Ex.10).

On May 13, 2011, International Expo made a single payment of $2,500.00. (Doc. #8-2, Ex. 12). This payment has been credited to the oldest delinquent contribution, January 2011, reducing the amount owed for this period to $6,172.00 (rounded to the nearest dollar).

Rounding these unpaid contributions to the nearest dollar, International Expo is delinquent by a total of $13,817.

        **b.**    **Interest and Liquidated Damages**

In addition to the unpaid monthly contributions discussed above, the defendant delayed payment of its required contributions for an additional four month-long periods. For October 2010, International Expo reported that it owed $949.00; it did not pay this amount until February 2011. (Doc. #8-2, Ex. 7). For November 2010, International Expo reported that it owed $514.65; it did not pay this amount until February 2011. (Doc. #8-2, Ex. 8). For December 2010, International Expo reported that it owed $135.05; it did not pay this amount until February 2011. (Doc. #8-2, Ex. 9). For March 2010, International Expo reported that it owed $302.90; it did not pay this amount until May 2011. (Doc. #8-2, Ex. 11).

For the purposes of the liquidated damages calculation, the total of all delinquencies (rounded to the nearest dollar) is $18,218.[1] The trust funds' governing documents and ERISA provide for liquidated damages of 20% of the delinquent contributions. Thus, International Expo owes $3,644 in liquidated damages.

Finally, the trust funds' governing documents provide for 18% interest on delinquent contributions. (Doc. #8; *see also* doc. #8-2, Exs. 1, 2, 3, and 4). The total amount of interest due to the plaintiffs is calculated by multiplying the daily rate of each delinquency by the number of days the contribution is overdue.[2] The daily rate is determined by multiplying the amount of each delinquency by .18 and then dividing that result by 365 – the number of days in one year. Under this formula, International Expo owes $3,148 in interest on the delinquent contributions.

        **c.**    **Administrative Fees**

Plaintiffs further assert, pursuant to the collection policy, that they are entitled to an administrative fee of $250 for every delinquent contribution "in order to pass through to the

---

[1] This total includes the delinquent payments for the January 2010, February 2010, October 2010, November 2010, December 2010, January 2011, and March 2011 periods. This total amount does not include a reduction for International Expo's May 2011 payment of $2,500. Liquidated damages for the January 2010 monthly period become applicable once International Expo failed to make the contributions in a timely manner. Thus, the defendant's later payment of $2,500 does not reduce the amount of liquidated damages.

[2] This order calculates the accrued interest as of August 1, 2011.

James C. Mahan
U.S. District Judge

- 6 -

1  delinquent employer those reasonable and necessary costs of administration that arise as a direct
2  result of that employer's delinquencies. (Doc. #8). International Expo has been delinquent during
3  seven monthly contribution periods. Therefore, in accordance with the collection policy,
4  International Expo is assessed administrative fees of $1,750.

### d.  Attorneys' Fees and Costs

Plaintiffs are entitled to receive reasonable attorneys' fees and costs under ERISA. 29 U.S.C. § 1132(g)(2)(D). Plaintiffs have provided the court with the total fees and costs incurred beginning in March 2011, and continuing until July 2011, in the amount of $3,360. Pursuant to Local Rule 54-16, a party requesting attorneys' fees must file a motion demonstrating the reasonableness of the award, an itemization and description of the work performed, an itemization of all costs, and an attorney affidavit. Plaintiffs have complied with the requirements of the local rules, warranting an award of attorneys' fees.

First, plaintiffs contend that the amount sought is based on "the normal billing rates" for the firm and that the amount is reasonable because "(1) the [plaintiffs] were forced to file a [c]omplaint seeking delinquent contributions from IES; (2) the [plaintiffs] were forced to prepare an [a]pplication for [d]efault when IES failed to appear in the case; (4) all fees charged were reasonable and necessarily incurred for the prosecution of the [plaintiffs'] claims; and (5) the [plaintiffs] were provided with competent and quality representation by experienced ERISA attorneys." (Doc. #8).

Second, plaintiffs provided the court with records that itemize and describe the work performed by the attorneys. (Doc. #8-2, Ex. 13). Lastly, as required by the local rules, plaintiffs filed the attorney affidavit of Adam P. Segal (doc. #8-2, Ex. 1), which states that he reviewed the bills in this case and that they are "true, correct, and reasonable."  Upon reviewing the fees sought and determining their reasonableness, the court is inclined to grant attorneys' fees and costs.

In addition to the past fees incurred, plaintiffs argue that the court should award $5,000 in anticipated fees for executing the judgment. To support this, the plaintiffs rely on 29 U.S.C. § 1132(g)(2)(E), which states that the court may award any other legal relief it deems appropriate. As Adam P. Segal's affidavit (doc. #8-2, Ex. 1) corroborates the assertion that awarding the anticipated

**James C. Mahan**
**U.S. District Judge**

- 7 -

fees is appropriate because that is the amount it will cost to execute the judgment against the defendants, the court is inclined to award such fees.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiffs Trustees of the Teamsters Local 631 Security Fund for Southern Nevada and Trustees of the Teamsters Convention Industry Training Fund's motion for default judgment (doc. #8) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED default be entered against defendants International Expo Service, Inc. in the amount of $30,719.00, representing delinquent contributions, liquidated damages, interest, administrative fees, attorneys' fees and costs, and costs to execute the judgment.

DATED August 17, 2011.

_____
UNITED STATES DISTRICT JUDGE